**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Regis SESKEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 4, 2013.

Filed Feb. 19, 2014.

Reargument Denied April 21, 2014.

Chris R. Eyster, Ligonier, for appellant.

Michael W. Streily, Deputy District Attorney and Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: ALLEN, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.:

In this case, we are called upon to consider the United States Supreme Court's decision in *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) in light of the Pennsylvania Supreme Court's decision in *Commonwealth v. Cunningham*, —— Pa. ——, 81 A.3d 1 (2013).

Regis Seskey ("Appellant") appeals from a May 1, 2012 order. That order dis-

* Retired Senior Judge assigned to the Superior Court.

missed Appellant's second petition for relief under the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–46, as untimely. We affirm.

When Appellant was seventeen years old, he was arrested and charged with criminal homicide for the shooting death of Mark Bova. On March 14, 1994, following a jury trial, Appellant was convicted of first-degree murder.[1] On March 22, 1994, Appellant was sentenced to life in prison. On February 2, 1996, we affirmed Appellant's judgment of sentence. *See Commonwealth v. Sesky,* No. 600 Pittsburgh 1994, slip op. at 1, 676 A.2d 286 (Pa.Super. Feb. 2, 1996). The Supreme Court denied *allocatur* on August 16, 1996. *See Commonwealth v. Seskey,* 545 Pa. 670, 681 A.2d 1342 (1996) *(per curiam ).*

On August 15, 1997, Appellant filed his first PCRA petition. Without a hearing, the PCRA court dismissed Appellant's petition on August 11, 1998. On November 25, 2002, we affirmed the dismissal. *See Commonwealth v. Seskey,* No. 330 WDA 2002, slip op. at 10, 816 A.2d 334 (Pa.Super. Nov. 5, 2002). On July 21, 2003, our Supreme Court again denied *allocatur. See Commonwealth v. Seskey,* 573 Pa. 716, 828 A.2d 350 (2003) *(per curiam ).*

Appellant took no further action on his case until July 19, 2010, seven years after his first PCRA petition reached finality. The PCRA court set forth the procedural history as it transpired after Appellant's July 19, 2010 petition as follows:

Seven years after his second request for our state Supreme Court to review his case, [Appellant] filed a *pro se* Motion for PCRA relief. Counsel was appointed and, on February 15, 2012, he filed a two[-]headed pleading. His first claim was a Petition for Habeas Corpus Relief pursuant to Article 1, Section 14 of the Pennsylvania Constitution. His second claim was based upon the [PCRA]. The Court directed the Commonwealth to file an answer. It complied on March 14, 2012. A week later, this Court issued an order indicating its intent to dismiss [Appellant's] second PCRA[, wherein this Court stated the following:]

The Court takes this position because of the one (1) year time limitation at [42 Pa.C.S. § 9545(b) ] and [Appellant's] failure to satisfy any exceptions to the jurisdictional bar. The Court is also persuaded by the waiver argument advanced by the Commonwealth. Additionally, the Court finds—and is obligated to follow—the decision of *Commonwealth v. Ortiz,* 17 A.3d 417 (Pa.Super.2011). *Ortiz* ruled the U.S. Supreme Court's decision in [*Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) ], does not apply to homicide cases. This is a homicide case from 1992! "At some point litigation must come to an end." *Commonwealth v. Peterkin* [554 Pa. 547], 722 A.2d 638, 643 (Pa.1998).

Order, (March 21, 2012). On April 30, 2012, [Appellant] filed a response to the Court's notice to dismiss. It raised no new claims. It responded to none of the justifications relied upon by the Court. It said [Appellant] "wishes to proceed with" his PCRA. Response, [¶ 2], (Apr. 30, 2012). On May 1, 2012, the Court followed up on its previously expressed intent and dismissed the PCRA petition.

\* \* \*

On May 14, 2012, a timely *Notice of Appeal* ("NOA") was filed. A [Pa. R.A.P.] 1925(b) order followed. On June 4, 2012, a timely Concise Statement of Errors Complained of on Appeal was filed. Through a June 18[, 2012]

---

1. 18 Pa.C.S. § 2502(a).

order, the Court directed [Appellant] to file an Amended Concise Statement [to clarify one paragraph raised in the original statement.] The Amended Concise Statement was filed on June 25[, 2012]. [Appellant] simply eliminated [the unclear paragraph] from his original concise statement. As such, the matters [Appellant] intends to litigate on appeal are as follows:

1. The Court erred in denying [Appellant's] petition without a hearing.

2. The Court erred in denying [Appellant's] petition pursuant to *Graham v. Florida* and its progeny.

3. The Court erred in denying [Appellant's] petition where the Commonwealth violated [Appellant's] due process rights and *Brady v. Maryland* [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] by failing to disclose that [an] accomplice would not be prosecuted in exchange for his trial testimony.

4. The Court erred by not finding such evidence newly discovered evidence.

Amended Concise Statement, June 25, 2012.

Trial Court Opinion ("T.C.O."), 6/24/2012, at 5–6 (some emphasis removed for consistency).

On June 25, 2012, after Appellant had filed a notice of appeal, the United States Supreme Court issued its decision in *Miller*, in which Court recognized a constitutional right for juveniles under the age of eighteen, and held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against 'cruel and unusual punishments.'" *Id.* at 2460. On June 27, 2012, Appellant filed a motion with this Court requesting that the case be remanded to the PCRA court in light of *Miller*. On June 29, 2012, this Court denied Appellant's motion. On July 5, 2012, Appellant sought reconsideration of the order. That motion was denied the following day. In response, Appellant filed a third PCRA petition in the PCRA court seeking relief under *Miller*.

In his initial brief to this Court, Appellant abandoned the four claims that he had raised in his second PCRA petition and in his concise statement of errors complained of on appeal. Instead, Appellant raised the following four questions for our review, each of which concerned the application of *Miller*:

I. Whether Appellant's life sentence without the possibility of parole for a juvenile is unconstitutional under the Eighth Amendment [to] the United States Constitution as well as Article I, Section 13 of the Pennsylvania Constitution?

II. Whether this Court applies *Miller v. Alabama* retroactively and remands this case for re-sentencing?

III. Whether Appellant should be re-sentenced based on the most severe lesser included offense of third-degree murder?

IV. Whether Appellant is entitled to an individualized re-sentencing hearing based on the lesser-included offense of third-degree murder?

Initial Brief for Appellant at 3.

While this case was pending, the Pennsylvania Supreme Court issued its decision in *Cunningham*, wherein the Court held that *Miller* did not apply retroactively. *Cunningham*, 81 A.3d at 6. In light of *Cunningham*, Appellant filed a motion with this Court seeking leave to file a supplemental brief. We granted Appellant's request, and provided both parties

the opportunity to file supplemental briefs. Both parties have done so.

In his supplemental brief, Appellant now presents the following five issues for our consideration:

I. Whether Appellant's life sentence without the possibility of parole for a juvenile is unconstitutional under the Eighth Amendment [to] the United States Constitution as well as Article I, Section 13 of the Pennsylvania Constitution?

II. Whether this Court must apply *Miller v. Alabama* retroactively under federal and Pennsylvania law and remand this case for re-sentencing?

III. Whether Appellant's mandatory sentence of life without parole is unconstitutional under both Article I, §§ 1, 9, & 13 of the Pennsylvania Constitution and the Eighth and Fourteenth Amendments to the U.S. Constitution because two classes of prisoners sentenced to mandatory life without parole are treated differently?

IV. Whether this Court can also review these claims under Pennsylvania's constitutional guarantee of *Habeas Corpus* ?

V. Whether Appellant should be re-sentenced based on the most severe lesser-included offense of third-degree murder?

Supplemental Brief for Appellant at 3.

■ With the exception of issue IV, which we address separately at the end of this opinion, Appellant's claims are founded on the basic premise that his life sentence, which was imposed upon him when he was a juvenile, violates his right to be free from cruel and unusual punishment. It is well-established that such a claim constitutes a nonwaivable challenge to the legality of the sentence. *Commonwealth v. Brown,* 71 A.3d 1009, 1010 (Pa.Super.2013) (citing *Commonwealth v. Yasipour,* 957 A.2d 734, 740 n. 3 (Pa.Super.2008); *Commonwealth v. Howard,* 373 Pa.Super. 246, 540 A.2d 960, 961 (1988)). Thus, even though Appellant's claims were not first presented to the PCRA court in Appellant's PCRA petition or in his Rule 1925(b) concise statement as challenges to the legality of the sentence, they cannot be waived.

■ However, the fact that these claims are not waived does not mean that we have jurisdiction to review them. Waiver and jurisdiction are separate matters. "Though not technically waivable, a legality [of sentence] claim may nevertheless be lost should it be raised for the first time in an untimely PCRA petition for which no time-bar exception applies, thus depriving the court of jurisdiction over the claim." *Commonwealth v. Slotcavage,* 939 A.2d 901, 903 (Pa.Super.2007) (citing *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 223 (1999) ("Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto.")).

■ "The PCRA's time restrictions are jurisdictional in nature. Thus, [i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Albrecht,* 606 Pa. 64, 994 A.2d 1091, 1093 (2010) (quoting *Commonwealth v. Chester,* 586 Pa. 468, 895 A.2d 520, 522 (2006)). Statutory time limitations "are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits." *Fahy,* 737 A.2d at 222.

In *Commonwealth v. Jackson,* we articulated the timeliness standards under the PCRA as follows:

The PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. § 9542. When an action is cognizable under the PCRA, the PCRA is the "sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose[.]" 42 Pa. C.S.A. § 9542.

In order for a court to entertain a PCRA petition, a petitioner must comply with the PCRA filing deadline. *See Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157, 1161 (2003). The time for filing a petition is set forth in 42 Pa.C.S.A. § 9545(b), which provides in relevant part:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period

provided in this section and has been held by that court to apply retroactively.

\*    \*    \*

42 Pa.C.S.A. § 9545(b).

"[T]he time limitations pursuant to ... the PCRA are jurisdictional." [*Fahy,* 737 A.2d at 222]. "[Jurisdictional time] limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits." *Id.* "If the petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." *Commonwealth v. Perrin,* 947 A.2d 1284, 1285 (Pa.Super.2008).

*Commonwealth v. Jackson,* 30 A.3d 516, 518–19 (Pa.Super.2011).

■ Appellant's instant PCRA petition was not filed until seven years after his first PCRA petition was litigated to finality, and approximately thirteen years after his judgment of sentence became final. Thus, Appellant's second PCRA petition facially is untimely.

As noted above, the facial untimeliness of Appellant's petition renders this Court (indeed, any court) without jurisdiction to review the substantive claims that Appellant raises in issues I–III and V unless one of the three exceptions to the PCRA's time-bar applies. The only potentially applicable exception is subsection 9545(b)(1)(iii), the newly-recognized, and retroactively-applied, constitutional right exception predicated upon the Supreme Court's decision in *Miller.*

Subsection (iii) of Section 9545[ (b)(1) ] has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Su-

preme Court of the United States or [the Supreme Court of Pennsylvania] after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.,* "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

*Commonwealth v. Copenhefer,* 596 Pa. 104, 941 A.2d 646, 649–50 (2007) (quoting *Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497, 501 (2002)).

■ Recently, in *Cunningham,* our Supreme Court held that the constitutional right announced by the United States Supreme Court in *Miller* does not apply retroactively. 81 A.3d at 10. Consequently, Appellant cannot rely upon *Miller* or subsection 9545(b)(iii) to establish jurisdiction over his untimely PCRA petition in any Pennsylvania court. Hence, we lack jurisdiction to review the merits of Appellant's issues I–III and V.

■ Throughout his brief, Appellant attempts to circumvent the effect that *Cunningham* has upon our jurisdiction by arguing, *inter alia:* that he is entitled to relief under Article 1, § 13 of the Pennsylvania Constitution ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."), independently of the Eighth Amendment, Brief for Appellant 10–13; that *Miller* should be applied retroactively based upon Pennsylvania's broader retroactivity principles, Brief for Appellant at 19–26; and that the inequitable result that *Miller* created violates Pennsylvania's due process and equal protection principles. Brief for Appellant at 27–30. While these arguments someday may require consideration by our courts, today cannot be that day. Before a court may address Appellant's arguments, or similar contentions, that court must have jurisdiction. We cannot manufacture jurisdiction based upon the substantive claims raised by the parties. Presently, we are confined by the express terms of subsection 9545(b)(1)(iii) and our Supreme Court's decision in *Cunningham.* Combined, those two elements require us to conclude that we lack jurisdiction. No substantive claim can overcome this conclusion.

Issue IV requires a somewhat different analysis, but meets a similar fate as the rest of Appellant's issues. In his concurring opinion in *Cunningham,* Chief Justice Castille expressed concern over the "seeming inequity" that "arises from the fact that the prospect of an individualized, discretionary judicial determination of whether a juvenile murderer should ever be afforded parole eligibility depends solely upon the happenstance of the moment that the defendant's conviction became final." *Cunningham,* 81 A.3d at 11 (Castille, C.J., concurring). The Chief Justice offered several "thoughts upon the prospects of other methods of remedying the seeming inequity arising in the post-*Miller* landscape." *Id.* at 14. One such thought included a suggestion that the post-*Miller* inequity might be pursued through a petition under Pennsylvania's *habeas corpus* statute, 42 Pa.C.S. § 6501 ("The privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion the public safety may require it.").

Appellant seeks to avoid the jurisdictional bar by asserting that the *habeas corpus* statute, when combined with various provisions of the Pennsylvania Constitution, provides this Court with authority to review his claims. However, Appellant does not develop this argument in any meaningful way. Appellant cites Chief Justice Castille's reference to the possibility of the *habeas corpus* statute forming a potential avenue for relief, and then lists five constitutional provisions that he believes should be read in conjunction with that statute so as to establish our jurisdiction. *See* Brief for Appellant at 31.[2] Then, Appellant's argument abruptly ends.

Appellant does not address certain critical issues that must be resolved in tandem with his claim. For instance, Appellant does not address how and why this claim should be considered under the *habeas corpus* statute instead of under the PCRA (a concern that Chief Justice Castille did not resolve definitively, *see Cunningham*, 81 A.3d at 18). Moreover, Appellant does not even attempt to apply the principles set forth in his brief to the circumstances of his case. His argument in this regard consists of a laundry list of legal authorities, with no specific discussion or application of those authorities to this case. Consequently, we will not resolve the question of whether the *habeas corpus* statute provides a viable mechanism to establish jurisdiction in this situation; rather, we find Appellant's argument to be waived. *See Commonwealth v. Delvalle*, 74 A.3d 1081, 1087 (Pa.Super.2013) (finding undeveloped claim to be waived).

For the preceding reasons, Appellant's PCRA petition is untimely, with no applicable exceptions. Therefore, we lack jurisdiction to consider Appellant's substantive claims.

Order affirmed.

Judgment Entered.

STRASSBURGER, J. files a Concurring Opinion.

## CONCURRING OPINION BY STRASSBURGER, J:

I agree that the PCRA court's May 1, 2012 order should be affirmed. I join the Majority's analysis of all of Appellant's issues with the exception of issue IV regarding Appellant's petition for *habeas corpus* relief.

"[A] defendant cannot escape the PCRA time-bar by titling his petition or motion as a writ of *habeas corpus*." *Commonwealth v. Taylor*, 65 A.3d 462, 466 (Pa.Super.2013). "Issues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a *habeas corpus* petition." *Id.* Because Appellant's claims may be addressed under the PCRA, *see* 42 Pa.C.S. § 9543(a)(2)(i) (providing that PCRA relief is available for convictions resulting from constitutional violations), the PCRA court properly dismissed Appellant's *habeas corpus* petition as an untimely PCRA petition.

---

2. The constitutional provisions cited by Appellant include Article 1, §§ 1 (recognizing the right to life and liberty), 9 (recognizing the right to effective assistance of counsel), 11 (recognizing the right of access to open courts), 14 (recognizing the right to seek *habeas corpus*), and 25 (recognizing that all of the rights listed in Article 1 are "excepted out of the general powers of government and shall forever remain inviolate."). *See* Brief for Appellant at 31.