J-S60021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT J. HOUSE | |
| Appellant | No. 819 MDA 2014 |

Appeal from the Order Entered April 24, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0002768-2003

BEFORE:  OTT, STABILE, and JENKINS, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 13, 2014**

Appellant Robert J. House *pro se* appeals from an order of the Court of Common Pleas of Dauphin County (PCRA court), which dismissed without a hearing his request for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46.  For the reasons set forth below, we affirm.

The facts and procedural history underlying this appeal are undisputed.  As we have previously recounted:

> On March 7, 2003, Brent Mosley ["Mosley"] and Rikeena Turner ["Turner"] exited the home of a friend on North 15th Street in Harrisburg, Pennsylvania.  Mosley noticed that a champagne-colored car, which he had seen when he entered the home, was still parked across the street.  Mosley and Turner got into Mosley's car and began to drive away; the car that had been parked across the street followed and eventually blocked their lane of travel on 19th Street.  A man identified as Appellant, and another man, exited the champagne-colored car and approached Mosley's vehicle.  The two men were both brandishing guns, and they ordered Mosley out of his car.
>
> A third man, the driver of the champagne-colored car, then exited the car.  He walked to Mosley's car and pulled him out. One of the assailants ripped a gold necklace from Mosley's neck.

Mosley was able to overpower his attacker and flee to his car; his vehicle was then fired upon by the attackers. The bullets penetrated the car, but they did not strike Mosley or his passenger.

*Commonwealth v. House*, No. 571 MDA 2010, unpublished memorandum at 1-2 (Pa. Super. filed December 21, 2010) (citation omitted).

On June 17, 2004, a jury convicted Appellant of aggravated assault and conspiracy to commit aggravated assault. On September 9, 2004, the trial court sentenced Appellant to a term of incarceration of thirteen and one-half years to twenty-seven years. On August 9, 2005, this Court affirmed Appellant's judgment of sentence.

On October 28, 2005, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, and subsequently permitted counsel to withdraw. On August 31, 2006, the PCRA court dismissed Appellant's PCRA petition. Appellant filed a timely appeal, and this Court affirmed the order of the PCRA court denying relief on October 30, 2007.

On February 9, 2009, Appellant filed a document titled: "Petition for Writ of Habeas Corpus Ad Subjiciendum." On February 24, 2010, the PCRA court dismissed Appellant's petition.

*Id.* at 2 (internal citation omitted). Treating Appellant's habeas petition as an untimely PCRA petition, we affirmed the PCRA's order. *Id.* at 4-8.

On March 14, 2013, Appellant filed his third (instant) petition for PCRA relief, alleging after-discovered evidence. Specifically, Appellant claimed that Commonwealth witness Mosley had recanted his trial testimony identifying Appellant as the shooter. In support of this claim, Appellant attached to the petition an affidavit by Mosley. The affidavit provided in pertinent part:

I, Brent Mosley . . . testified at the trial of [Appellant] held on June 14th-17th. I testified that he, in the company of others, fired shots at me. As a result of me identifying him as the shooter he was convicted.

This statement of facts within this affidavit are my true an [sic] accurate account of the incident despite the false testimony I provided at trial. From the outset of this case I was reluctant

- 2 -

to state what actually took place and didn't want anything to do with the matter. On May 4, 2003 I informed Detective Aaron Paige that I didn't want to press charges nor did I want anything to do with the matter.

Following my arrest for my own unrelated criminal matters, I decided to use the case against [Appellant] as a means to reduce any potential prison time I faced. In turn, I lied and told the authorities that I would testify that [Appellant] was the shooter during the incident in questions [sic].

In comparison to my previously made statements, I lied and testified that [Appellant] shot at me. That testimony was false, [Appellant] did not shoot at me. Any previous testimony I may have provided, I will discredit with the facts within this affidavit if called on to do so.

Mosley's Affidavit, 2/19/13. Following receipt of Appellant's answer to the PCRA court's Pa.R.Crim.P. 907 notice of intention to dismiss, the court dismissed without a hearing Appellant's PCRA petition on April 24, 2014. Appellant appealed to this Court. Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court filed a Pa.R.A.P. 1925(a) opinion on June 5, 2014, by which it incorporated its April 7, 2014 opinion filed in support of its Rule 907 notice. In its April 7, 2014 opinion, the PCRA court concluded that Appellant's third PCRA petition was not only facially untimely, but it also failed to prove the after-discovered evidence exception to the one-year time bar set forth in Section 9545(b)(1)(ii) of the PCRA.[1] The PCRA court found Appellant provided "no

_____

[1] Generally, a petition for PCRA relief, including second or subsequent petition, must be filed within one year of the date the judgment is final. *See* 42 Pa.C.S.A. § 9545(b)(3); *see also Commonwealth v. Alcron*, 703 A.2d 1054, 1056 (Pa. Super. 1997), *appeal denied*, 724 A.2d 348 (Pa. 1998). One exception to the timeliness requirement, however, is after-discovered facts or evidence. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii) (This exception requires a petitioner to plead and prove that "the facts upon which the claim
*(Footnote Continued Next Page)*

. . . evidence that he could not have obtained," by the exercise of due diligence, Mosley's proffered statement at or prior to trial. PCRA Court Opinion, 4/7/14, at 5. The court also found that Mosley's recantation statement was cumulative in that it closely mirrored his testimony at trial and that the introduction of the recantation sought "to challenge the credibility of another trial witness."[2] *Id.* at 9-11.

On appeal,[3] Appellant essentially argues that the trial court erred in dismissing his PCRA petition without a hearing. After careful review of the

*(Footnote Continued)* ————————————————

is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence."). A PCRA petition invoking a timeliness exception must "be filed within 60 days of the date the claims could have been presented." 42 Pa.C.S.A. § 9545(b)(2). We have no jurisdiction over untimely PCRA petitions. *See Commonwealth v. Seskey*, 86 A.3d 237, 241 (Pa. Super. 2014).

[2] With regard to recanted testimony, we have previously stated:

> While [the appellate courts have] often acknowledged the limitations inherent in recantation testimony, we have not foreclosed the possibility that, in some instances, such testimony may be believed by the factfinder and thus form a basis for relief. For this to occur, however, the testimony must be such that it could not have been obtained at the time of trial by reasonable diligence; must not be merely corroborative or cumulative; cannot be directed solely to impeachment; and must be such that it would likely compel a different outcome of the trial. In addition, an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion.

*Commonwealth v. Hammond*, 953 A.2d 544, 561 (Pa. Super. 2008) (citation and quotation omitted), *appeal denied*, 964 A.2d 894 (Pa. 2009).

[3] As we recently noted in *Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014) (*en banc*):

> On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's

*(Footnote Continued Next Page)*

parties' briefs, the record on appeal, and the relevant case law, we conclude that the PCRA court's 1925(a) opinion incorporating its April 7, 2014 opinion authored by the Honorable Todd A. Hoover, thoroughly and adequately disposes of Appellant's issue on appeal.[4]  **See** PCRA Court 1925(a) Opinion, 6/5/14, PCRA Court Opinion, 4/7/14, at 3-11.  We, therefore, affirm the PCRA court's order dismissing Appellant's PCRA petition without a hearing. We direct that a copy of the PCRA court's June 6, 2014 Rule 1925(a) opinion and April 7, 2014 opinion in support of its Rule 907 notice be attached to any future filings in this case.

_(Footnote Continued)_ _____

> findings are supported by the record and without legal error. Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level.  The PCRA court's credibility determinations, when supported by the record, are binding on this Court.  However, this Court applies a _de novo_ standard of review to the PCRA court's legal conclusions. Additionally, courts will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong _prima facie_ showing that a miscarriage of justice may have occurred.  Appellant makes a prima facie showing of entitlement to relief only if he demonstrates either that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged.

**Medina**, 92 A.3d at 1214-15 (internal citation and quotation marks omitted).

[4] We observe that Mosley's recantation probably would not result in a different verdict if a new trial were awarded.  Aside from the testimony of Mosley's passenger (Turner) identifying Appellant as the shooter, **see** N.T. Trial, 6/14-17/04, at 310-11, the recantation itself acknowledges the commission of perjury.  Therefore, his original testimony at Appellant's trial would be admissible in a new trial as substantive evidence based on it being a prior inconsistent statement made under oath.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2014

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 2768 CR 2003
:
ROBERT J. HOUSE : CHARGE(S): CRIMINAL MATTER

## TRIAL COURT OPINION

This appeal follows the denial of Defendant's request for Post Conviction Relief by Final Order filed April 24, 2014.

Defendant filed a Notice of Appeal on May 9, 2014. Pursuant to our directive, Defendant filed a timely Concise Statement of Matters Complained of on Appeal.

Our Memorandum Opinion and Order filed April 7, 2014, a copy of which we attach hereto for ease of reference, sets forth all of the bases for our denial of relief and addresses Defendant's claims on appeal.

BY THE COURT:

*Todd Hoover*

TODD A. HOOVER
PRESIDENT JUDGE

June 4, 2014

**Distribution:** 6-5-14 @ 12:12 pm

**Dauphin County Office of the District Attorney** I/O

**Robert J. House, FY7734, SCI-Mahonoy,** *via certified mail, return receipt requested* Mail

5-42

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 2768 CR 2003
:
ROBERT J. HOUSE : CHARGE(S): CRIMINAL MATTER

## MEMORANDUM OPINION
## AND ORDER

This matter comes before the court on the *pro se* Motion of Robert House ("Defendant") under the Post Conviction Relief Act, his third. For the reasons set forth herein, Defendant is apprised of this court's **INTENT TO DISMISS** the Petition for Post Conviction Relief.

## PROCEDURAL HISTORY

Following a jury trial conducted June 14, 2004 through June 17, 2004, a jury returned a verdict of guilty against Robert J. House on charges of Aggravated Assault and Conspiracy to Commit Aggravated Assault of Brent Mosley. On September 9, 2004, the trial court sentenced Petitioner to a term of incarceration of not less than thirteen and one-half years, nor more than twenty-seven years in a state correctional institute. Following sentencing, on October 5, 2004, Petitioner filed a timely appeal asserting that the trial court improperly admitted evidence of prior crimes of which Petitioner had been acquitted. The Superior Court affirmed judgment on August 9, 2005.

On October 28, 2005, Defendant filed a *pro se* Petition for Relief under the Post Conviction Relief Act. The court appointed William Shreve, Esquire as counsel for Petitioner on November 9, 2005, and granted additional time to file a Supplemental Petition.

1

On January 30, 2006, PCRA Counsel filed a Motion to Withdraw. We granted the Motion to Withdraw and dismissed Defendant's PCRA Petition. Defendant appealed. The Superior Court reviewed Defendant's seven claims of ineffectiveness, and affirmed the Order of the PCRA court on October 30, 2007.

On February 9, 2009, Defendant filed a "Petition for Writ of Habeas Corpus Ad Subjiciendum" which the PCRA court dismissed on February 24, 2010. Defendant appealed. The Superior Court affirmed denial of the Petition by Order of December 3, 2010.

On March 11, 2013, Defendant filed a Petition for Relief under the Post Conviction Relief Act. [1] The Commonwealth filed an Answer on April 11, 2013.

## FACTUAL BACKGROUND

The Superior Court has summarized the facts as follows:

On March 7, 2003, Brent Mosley ["Mosley"] and Rikeena Turner ["Turner"] exited the home of a friend on North 15th Street in Harrisburg, Pennsylvania. Mosley noticed a champagne-colored car, which he had seen when he entered the home, was still parked across the street. Mosley and Turner got into Mosley's car and began to drive away; the car that had been parked across the street followed and eventually blocked their lane of travel on 19th Street. A man identified as [House], and another man, exited the champagne-colored car and approached Mosley's vehicle. The two men were both brandishing weapons, and they ordered Mosley out of the car.

A third man, the driver of the champagne-colored car, then exited the car. He walked to Mosley's car and pulled him out. One of the assailants ripped a gold

---

[1] We note that the document bears the stamp March 11, 2012, although the entry is docketed on March 11, 2013.

2

necklace from Mosley's neck. The third man and Mosley then began to fight on the street. Mosley was able to overpower his attacker and flee to the car; his vehicle was fired upon by the attackers. The bullets penetrated the car, but they did not strike Mosley or his passenger.

*Commonwealth v. House*, No. 1720 MDA 2006 slip op. at 2, (Pa. Super. filed October 30, 2007)(unpublished memorandum) citing *Commonwealth v. House*, No. 1572 MDA 2004, slip op. at 10 (Pa. Super. filed August 9, 2005)(unpublished memorandum)

## DISCUSSION

Defendant's proffered recantation statement fails as after-discovered evidence. Therefore, the Petition does not satisfy an exception to the timeliness requirement.

A PCRA Petition must be filed within one year of the date that the judgment became final. 42 PA.C.S.A. 9545 §(b)(1). The time requirement is mandatory and jurisdictional in nature and the court may not ignore it in order to reach the merits of the petition. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201 (2000). The court may consider an untimely petition only where the petitioner proves one of the limited exceptions set forth in 42 PA.C.S.A. §9545 (b)(1)(i)(ii) and (iii) which provide:

    (i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

    (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence;

3

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 PA.C.S.A. §9545 (b)(1)(i)(ii) and (iii).

On its face, Defendant's Petition is untimely in that the judgment of sentence became final on September 9, 2005, the expiration of the appeal period from the Superior Court's affirming order of August 9, 2005. Although otherwise untimely, a petitioner may be eligible for relief if he pleads and proves that his conviction or sentence resulted from "[t]he unavailability at trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it has been introduced." *Commonwealth v. Smith* 609 Pa 605, 17 A.3d 873 (2010) 42 PA. C.S.§ 9543 (a)(2)(vi). *Id. See also, Commonwealth v. Fiore*, 780 A.2d 704 (Pa. Super. 2001), *appeal dismissed*, 572 Pa. 568, 817 A.2d 1080 (2003).

In order to succeed with such claim, "the petitioner must establish by a preponderance of the evidence that: (1) the evidence has been discovered after the trial and could not have been obtained prior to trial through reasonable diligence; (2) such evidence is not cumulative; and the evidence is not being used solely to impeach credibility; and such evidence would likely compel a different verdict." *Id., citing Commonwealth v. Abu-Jamal*, 553 Pa. 485, 517, 720 A.2d 79, 94 (1993).

Defendant asserts that the recantation statement of Commonwealth witness Brent Mosley constitutes such after-discovered evidence. Without the need for an evidentiary hearing, we find that it does not.

4

Preliminarily, we reject Defendant's assertion that the purported recantation constitutes exculpatory evidence which the Commonwealth withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)(PCRA Petition para. 26) Defendant asserts,

> the affidavits[2] represents (*sic*) exculpatory and material and evidence that was unavailable at the time of trial, which has since become available and which could have changed the outcome of the trial had it been introduced to the jury that had to decide upon the credibility of Brent Mosley witness for the Commonwealth.

PCRA. para. 26

Defendant's *Brady* claim is devoid of factual support, and inconsistent with his after-discovered argument. Defendant does not assert that Mosley provided the current asserted account to police or the District Attorney. On its face, the statement belies such argument; it bears a date of February 19, 2013, and states only that from the outset he was reluctant to testify, did not wish to press charges, and wished to avoid involvement in the matter. Such assertions explain Mosley's consistent equivocation and hesitance to cooperate. Such statements are not exculpatory. Therefore, Petitions *Brady* claim lacks merit.

Next, Defendant does not demonstrate the unavailability of the proffered statement at the time of trial. Defendant avers that the statement was first disclosed on the date Mosley signed it, February 19, 2013, but provides no further evidence that he could not have obtained it at or prior to trial. (PCRA para. 19)

Our Supreme Court has held recantation by a witness, whose disputed credibility was fully explored at trial, does not render the statement after-discovered. In *Commonwealth v. Smith*, 609 PA. 605, 17 A.2d 873 (PA 2011), the Pennsylvania Supreme Court affirmed the PCRA court's

---

[2] Defendant also attaches his own statement which purports to state that his first PCRA counsel, William Shreve, Esq., "had the opportunity to interview Mr. Mosley." (Petition for Post Conviction Relief Act, Certification, p. 9) Defendant fails to develop this assertion in the context of the instant claims.

5

denial of guilt phase requests for relief, without an evidentiary hearing, where Smith offered a witness's post-trial affidavit stating that she saw someone other than defendant shoot victim. In that case, the Commonwealth's trial witness, Harris, provided a declaration which sought to recant her trial testimony and explain that her in-court identification was a product of police coercion. The Supreme Court summarized the facts as follows:

> Before trial, Harris made several statements to police initially claiming that she did not know who the shooter was, and then, in 1982, she identified Rucker as the shooter. Several years later, two weeks before [trial] Harris identified the [Appellant Smith] as the shooter. She testified at trial that witnessed [Smith] shoot[the victim] and that she had not identified him earlier because she was afraid of him. Counsel cross-examined her with regard to her relationship with [a confessed co-conspirator in the murder] her prior inability to identify the shooter, and her prior identification of Rucker, attempting to convince the jury that Harris was unreliable and not credible.

at 628.

Just as in the instant case, the defendant in *Smith* presented the PCRA court with a statement which sought to recant trial testimony, and provided various claimed motives for the trial testimony, including fear of involvement in the case. *Id*. In affirming the PCRA court, the Supreme Court agreed that the statement did not constitute after discovered evidence because Smith did not aver that he "could not have obtained the recantation or the circumstances of [the witness'] in-court identification at, or prior to, the conclusion of trial through reasonable diligence." at 630. *citing, Commonwealth v. Wilson*, 538 PA. 485, 649 A.2d 435, 448-49 (1994)

The Superior Court has held that not every boilerplate averment of recantation constitutes after-discovered evidence which requires an evidentiary hearing. In *Wilson*, the Pennsylvania Supreme Court rejected such claim without an evidentiary hearing, because the appellant did not show that the content of the statement could not have been obtained at or prior to trial, and the subject of the statement having been fully explored on cross-examination. The Court held that, "

6

[t]hese subjects were fully explored at trial during direct and cross examination . Thus, there is nothing contained in [the recantation statement] that was not or could not have been elicited at trial." at 449. In addition, the *Wilson* Court found that the asserted after-discovered recantation was not of a nature and character that would likely result in a different verdict if a new trial were granted, in that the contradictory statement amounted to an admission of perjury. *Id.*

The underlying flaw to Defendant's assertion is the same as that presented in *Commonwealth v. Smith*, namely, repeated inconsistencies which render the recantation so patently non-credible that we may dismiss it as a matter of law. As to the duty of the PCRA court, having heard the testimony at trial, to assess the credibility of the recantation, our Superior Court has explained:

> The well-established rule is that an appellate court may not interfere with the denial or grant of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion… recantation is extremely unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury. *Commonwealth v. Mosteller*, 446 Pa. 83, 88-89, 284 A.2d 786, 788 (1971)(*quotations and citations omitted*). A prerequisite to such relief is that 'the evidence upon which the relief is sought must be credible to the court.' *Commonwealth v. Lee*, 478 Pa. 70, 74, 385 A. 3d 1317, 1319 (1978); *See also Commonwealth v. Nelson*, 484 Pa. 11, 14, 398 A. 2d 636, 637 (1979)("It is up to the trial court to judge the credibility of the recantation."); *Commonwealth v. Fernandez*, 232 Pa. Super. 19, 332 A.2d 819, 821 (Pa. Super 1974)(explaining that 'credibility is key when a new trial is sought on the basis of recantation testimony').

*Commonwealth v. Loner*, 2003 Pa. Super. 393, 836 A.2d 125 (2003).

The PCRA court must assess the credibility of the recantation and its significance in light of the trial record. See, *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523 (Pa. 2007) Although recantation evidence is notoriously unreliable, it is particularly so where the witness claims to have committed perjury. ("Even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the

7

recantation in light of the evidence as a whole.") *Commonwealth v. D'Amato*, 579 PA. 490, 856 A.2d 806, 825 (2004)

The PCRA court may, without an evidentiary hearing, properly dismiss a petition based upon recantation statement where it provides an independent determination of credibility of the recantation in light of trial testimony. "[Pennsylvania courts] do not preclude the possibility that a credibility-based dismissal of a petitioner's claims involving recantation might be appropriate under some set of circumstances without the necessity of an evidentiary hearing." ) *Commonwealth v. Williams*, 557 PA. 207, 233, 732 A.2d 1167, 1181 (1999) "The PCRA court, as fact-finder, is in a superior position to make the initial assessment of the importance of [the recantation] testimony to the outcome of the case." It is incumbent upon the PCRA court to "render its own, independent findings of fact and conclusions of law concerning [the recanting person's credibility and the impact, if any, upon the truth-determining process which can be discerned from such testimony." *Id* at 1181. Thus, "the after-discovered evidence ties the court's credibility determination to the governing prejudice standard." *Commonwealth v. Johnson*, 600 PA. 329, 966 A.2d 523, 541 (2009)

> In assessing credibility, the question for the PCRA court is not whether the jury in fact would have credited the [new evidence] and [recantation] evidence. The question is whether the nature and quality of the evidence is such that there is reasonable probability that the jury would have credited it and rendered a more favorable verdict. That assessment must include a recognition of the impeachability of the witnesses and not merely a viewing of their testimony in a most favorable light. Some witnesses may display a demeanor, or be subject to such strong impeachment... that the court is convinced that no reasonable jury would believe them. On the other hand, some witnesses may conduct themselves, or be of such repute that the PCRA judge has substantial confidence that the judge would credit them "

*Id.* 361.

8

<u>Assessment of credibility of recantation statement</u>

We find that Mosley's recantation lacks any *initia* of reliability when viewed in relation to his trial testimony, which was fraught with equivocation.

In his direct testimony, Mr. Mosley testified that on the night of March 7, 2003, he parked his car near a friend's house on North 15th Street in Harrisburg. (Transcript of Proceedings, Jury Trial, June 14, 2004 through June 17, 2004)(Hereinafter, "N.T." p. 61) After visiting the friend, he and a Ms. Rikeena Turner exited the house, and saw a champagne colored car sitting across the street. (N.T. p. 62) As he pulled off in his vehicle the champagne colored car pulled off and appeared to follow his car. (N.T. pp. 62-63)

Mosley testified that he stopped briefly at his father's house, but did not tell his father that he believed someone was following him. (N.T. p. 63) Mosley testified that he returned to his car, drove several blocks, until, upon reaching a stop sign at the intersection of 19th and North Street, observed that his vehicle was blocked by the same car that he observed earlier. (N.T. pp. 63-64) Mosley testified that the Defendant and Tywon Russaw, who also had a gun, exited the car, and that Defendant approached the car window and pointed a gun at Mosley. Defendant and Tywon ordered Mosley to get out of the car, but he refused.(N.T. pp. 64-65) Mosley testified that the driver of the champagne colored car, Robert Hudson, became impatient and pulled Mosley out of his car. (N.T. p. 65) As Mosley and Hudson wrestled, someone yelled "shoot". (N.T. p. 65) As Mosley dove into his car, shooting began. (N.T. p. 65)

Mosley testified that he called his father, Linn Mosley, and that his father instructed him to come to his house. (N.T. pp. 66) Mosley testified that his father urged him to call police and tell them what happened. *Id.*

9

Mosley testified at trial that he did not tell the responding police officer everything about what occurred, although he had told his father everything. (N.T. p. 67) Mosley testified that he told police the name of the individual who shot at him, but that he did not want to press charges. *Id.*

Mosley testified that approximately six weeks later, Defendant approached and pointed a gun at his face as he waited in a car for take-out food. (N.T. p. 68) Mosley heard the gun click, but the gun did not fire. (N.T. p. 69) Mosley grabbed the gun and a struggle ensued. *Id.* Mosley testified that someone pulled him off the Defendant, then Defendant jumped in the car and drove away. (N.T. p. 70)

Mosley testified that he called his father, and police came to the scene. *Id.* Mosley testified that he did not want to press charges, but felt that he had to, because the car belonged to his girlfriend. *Id.* He felt he "had no choice". (N.T. p. 71) Mosley testified that he gave "the full story" regarding Defendant's involvement in both shootings. (N.T. p. 71)

The record reflects Mosley's repeated equivocation as to the accounts of what occurred. Mosley admitted that even after both incidents, he did not fully cooperate with the police because he was afraid and did not want to be involved. (N.T. p. 92; p. 115) On cross examination, the defense questioned Mosley regarding his testimony at the preliminary hearing of Tywon Russaw during which Mosley testified that he did not stop at his father's house. (N.T. pp. 98-99) When confronted with the inconsistency, Mosley acknowledged that he testified differently at the preliminary hearing. (N.T. p. 99) He also acknowledged that he did not provide police with a T shirt with a hole in the sleeve which he was wearing at the time of the shooting.

Cross-examination also revealed that when police called Mosley during the investigation, he lied about his identity, and said he did not know who Brent Mosley was. (N.T. p. 100) He

10

claimed that he knew the passenger in his car at the time of the first incident, Rikeena Turner, for years but curiously, did not know her last name.(N.T. p. 100) He initially told the police the car from which the assailants exited was blue, not champagne; on cross-examination Mosley testified that on the night of the incident, he could not tell the color of the car. (N.T. p. 116)

Mosley admitted that when it suited his purpose, he mislead police. (N.T. p. 120) Mosley testified that after the second incident, he decided to tell the truth. (N.T. p. 129) However, after making that decision, Mosley gave a written statement which did not contain the assailant's names, and changed the color of the car. (N.T. p. 132)

When viewed in the context of his trial testimony, we find that the purported recantation is not new evidence, could have, and was, addressed at trial.

Further, the statement seeks to challenge the credibility of another trial witness. Mosley's passenger, Ms. Turner, testified at trial as to her observations on the night of March 7, 2003. Ms. Turner testified that after noticing a car apparently following them, that car cut off Mosley's car. She identified as Defendant jumped out of the car, approached the car with a gun, and began shooting. (N.T. p. 308) The jury may well have disregarded all or part of Mosley's testimony and reached the verdict on other evidence in the case.

## CONCLUSION

The purported recantation statement is patently unreliable, fails as after-discovered evidence, and therefore Defendant's PCRA is untimely. For all of the foregoing reasons, we enter the following:

11

# ORDER

AND NOW, this 7th day of April, 2014, the court finds that no genuine issues of material fact exist, and no purpose could be served by further proceedings.

The Defendant is apprised of the court's INTENT TO DISMISS PCRA. If no objections are filed within *twenty days* of the date of receipt of this ORDER, the court will enter a FINAL ORDER DISMISSING PCRA.

BY THE COURT:

*Todd Hoover*

TODD A. HOOVER
PRESIDENT JUDGE

**Distribution:**

**Dauphin County Office of the District Attorney**

**Robert J. House, FY7734, SCI-Mahonoy,** *via certified mail, return receipt requested*

12