J-S44024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY WILLIAM DEYOUNG, | |
| Appellant | No. 3490 EDA 2016 |

Appeal from the PCRA Order August 18, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001158-2003

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                        **Filed August 4, 2017**

Appellant, Gregory William DeYoung, appeals *pro se* from the order denying his second petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  On appeal, Appellant argues that the recent holding by the United States Supreme Court in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), causes *Alleyne v. U.S.*, 133 S. Ct. 2151 (2013), to be retroactively applicable to his case.  We affirm.

The facts and procedural history are as follows: On December 16, 2002, Detective Victor J. Tunis of the Bristol Township Police Department responded to a call from the Villager Lodge in Bristol Township, Pennsylvania regarding a potential homicide in Motel Room 124.  N.T., 11/8/04, at 54–55.  Detective Tunis observed a white male, later identified as John George ("the decedent"), lying on his back with severe trauma to his face.  *Id.* at 55.

Detective Tunis noticed blood on the bed, curtains, carpet, ceiling, and walls, and down the outdoor hallway leading to the First Spanish Assembly of God Church. *Id.* Surveillance video from the Villager Lodge recorded on December 15, 2002, revealed that at or around 5:02 a.m., two individuals exited Motel Room 124 and walked towards the First Spanish Assembly of God Church. *Id.* at 55, 198–199.

Also on December 15, 2002, Appellant went to the emergency room at Capital Health System, Mercer Campus in Trenton, New Jersey. N.T., 11/10/04, at 198. He was admitted with a traumatic injury to the right forearm and was taken to the operating room for reconstructive surgery. *Id.* at 199. The treating doctor noted that Appellant's wounds were consistent with knife and gunshot wounds. *Id.* at 201.

Forensic pathologist Ian Hood, M.D., performed an autopsy of the decedent that revealed over fifty blunt-force and stab wounds. N.T., 11/9/04, at 53. The cause of death was hemorrhagic shock due to the lack of blood volume from all of the decedent's injuries. *Id.* at 74. The manner of death was ruled a homicide. *Id.* at 86–87.

On December 18, 2002, police executed a search warrant at 924 Olsen Avenue in Yardley, Pennsylvania, where Appellant and co-defendant, Edward Boback, were residing. N.T., 11/8/04, at 207, 220. The police recovered a semi-automatic weapon, which was later identified as the firearm that discharged a bullet found by Detective Tunis in the motel room. *Id.* at 111,

123. On the corner diagonal from the Olsen Avenue house, police officers discovered a red Ford Ranger pickup truck, in which they observed blood stains on the steering wheel and front seats. N.T., 11/8/04, at 201–202. Tire tracks and bloody leaves found at the First Spanish Assembly of God Church were consistent with the tires of the Ford Ranger and the blood found therein. *Id.* at 139–140. The blood from inside the truck was consistent with a mixture of DNA, and the blood sample from Appellant could not be excluded as a contributor. N.T., 11/12/04, at 21, 24. Appellant's DNA matched the blood sample from the sidewalk at the motel and a sample from the motel bedspread. *Id.* at 24, 26.

On December 19, 2002, Appellant was arrested and interviewed by Detective Timothy Fuhrmann and Detective Timothy Carroll. N.T., 11/10/04, at 184; N.T., 11/12/04, at 64. Appellant admitted to selling drugs and stated that the decedent was a regular customer who purchased $100–$200 worth of drugs daily. N.T., 11/10/04, at 184; N.T., 11/12/04, at 64. Appellant alleged that the decedent wanted to invest in Appellant's drug dealing business, so the decedent gave Appellant $4,000 to purchase and sell powdered cocaine. N.T., 11/10/04, at 175. Appellant stated that the decedent then took one-half of that cocaine but still expected repayment of the full $4,000. N.T., 11/12/04, at 70. On December 12, 2002, the decedent ordered Appellant to pay at least $1,000 of the money owed or he

would kill Appellant and everyone at the Olsen Avenue house. *Id.* at 104, 125.

Appellant admitted to striking the decedent but claimed that he never stabbed the decedent. N.T., 11/12/04, at 116, 127. According to Appellant, co-defendant Boback possessed the gun, brass knuckles, and knife used to kill the decedent. *Id.* at 113, 126. Appellant stated that when he tried to separate Boback and the decedent, he was accidentally cut and shot in the finger by Boback. N.T., 11/10/04, at 114. Appellant admitted that after leaving the motel, he "hoped [the decedent] was dead." *Id.* at 153.

Appellant was charged with first-degree murder, second-degree murder, burglary, conspiracy, and weapons violations in relation to the killing of the decedent. A jury trial commenced on October 29, 2004, and on November 15, 2004, the jury convicted Appellant of first-degree murder, burglary, possession of an instrument of a crime, and conspiracy.[1] On November 16, 2004, the trial court found Appellant guilty of person (former convict) not to possess a firearm and conspiracy to commit that offense.[2] On November 17, 2004, following a penalty-phase hearing, the jury entered a verdict of life imprisonment.

_____

[1] 18 Pa.C.S. §§ 2502(a), 3502(a), 907(a), and 903(a), respectively.

[2] 18 Pa.C.S. §§ 6105(a) and 903.

On December 8, 2004, the trial court formally sentenced Appellant to life imprisonment and a concurrent aggregate sentence of not less than four years nor more than eight years of incarceration on the remaining convictions. On December 20, 2004, Appellant filed timely post-sentence motions, alleging various claims of trial court error and ineffective assistance of counsel. At the conclusion of evidentiary hearings on September 16, 2005, and September 23, 2005, the trial court denied Appellant's post-sentence motions.

Appellant then filed a direct appeal to this Court. We affirmed Appellant's judgment of sentence. *Commonwealth v. DeYoung*, 918 A.2d 784, 2699 EDA 2005 (Pa. Super. filed December 13, 2006) (unpublished memorandum). Appellant did not file a timely petition for allowance of appeal to the Pennsylvania Supreme Court. Appellant's subsequent request to file such a petition *nunc pro tunc* on January 25, 2007, was denied by the Supreme Court. *Commonwealth v. DeYoung*, 10 MM 2007 (Pa. filed March 8, 2007).

On November 30, 2007, Appellant filed his first PCRA petition. Counsel was appointed to represent him, and hearings were held on March 2, 2011, May 2, 2011, and June 13, 2011. On December 16, 2011, the PCRA court denied Appellant's first PCRA petition. On September 17, 2013, this Court affirmed the denial of PCRA relief. *Commonwealth v. DeYoung*,

87 A.3d 383, 320 EDA 2012 (Pa. Super. filed September 17, 2013) (unpublished memorandum).

On March 25, 2016, Appellant filed the instant second PCRA petition ("Petition") asserting that imposition of his mandatory minimum life sentence was illegal and unconstitutional pursuant to *Alleyne*. Further, Appellant claimed that *Alleyne* should be applied retroactively because of the holding in *Montgomery*. The PCRA court issued a Notice of Intent to Dismiss Appellant's Petition pursuant to Pa.R.Crim.P. 907. Notice of Intent to Dismiss, 7/27/16.

The PCRA court dismissed the Petition on August 18, 2016, as untimely. Appellant filed a notice of appeal to this Court on October 31, 2016. Because the notice of appeal was dated August 25, 2016, and postmarked September 7, 2016, the PCRA court treated the notice of appeal as timely and attributed the delay to a breakdown of the court system. PCRA Court Opinion, 2/28/17, at 6. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

I. Whether the lower court erred in finding [Appellant's] PCRA [petition] as untimely where the United States Supreme Court in *Montgomery v. Louisiana* held that any cases out of their Court that were substantive in nature were retroactively applicable to all the States and in doing so caused *Alleyne v. U.S.* to become retroactively applicable to the [Appellant].

Appellant's Brief at 1.[3]

In reviewing the denial of PCRA relief, this Court must examine whether the PCRA court's determination is "supported by the record and free of legal error." **Commonwealth v. Fears,** 86 A.3d 795, 803 (Pa. 2014). If a PCRA court's credibility determinations are supported by the record, the determinations are binding. **Commonwealth v. Robinson,** 139 A.3d 178, 185 (Pa. 2016). This Court reviews questions of law *de novo*. **Commonwealth v. Rigg,** 84 A.3d 1080, 1084 (Pa. Super. 2014). Timeliness is a question of law, and thus, it must be reviewed *de novo*. **Id.**

Appellant first argues that his petition cannot be barred as untimely because it would result in an illegal sentence. Appellant's Brief at 2. He contends that, because "**Alleyne** goes directly to the legality of the sentence," the issue cannot be waived. **Id.** We disagree.

Under Pennsylvania law, neither this Court nor the PCRA court has jurisdiction over an untimely PCRA petition. **Commonwealth v. Seskey**, 86 A.3d 237, 241 (Pa. Super. 2014). Although legality of sentence is subject to PCRA review, claims must still first satisfy the PCRA time limits or one of the exceptions in order for a court to have jurisdiction. **Pace v. DiGuglielmo**, 125 S.Ct. 1807, 1808 (2005). Any petition for post-

_____

[3] We remind Appellant that according to Pa.R.A.P. 124(a)(4), all papers filed in an appellate court shall be "no smaller than 14 point in the text and 12 point in the footnotes. . . ."

conviction relief "shall be filed within one year of the date the judgment becomes final," unless one of the exceptions applies.[4]  Any petition attempting to invoke one of the exceptions "shall be filed within 60 days of the date the claim could have been presented."  42 Pa.C.S. § 9545(b)(2). To be entitled to the exceptions to the one-year filing requirement, "the petitioner must plead and prove specific facts that demonstrate his claim was raised within the sixty-day time frame" pursuant to § 9545(b)(2). ***Commonwealth v. Hernandez***, 79 A.3d 649, 652 (Pa. Super 2013) (quoting ***Commonwealth v. Carr***, 768 A.2d 1164, 1167 (Pa. Super. 2001)).  A judgment becomes final at the conclusion of direct review or the expiration of the time for seeking the review.  42 Pa.C.S. § 9545(b)(3).

---

[4] The exceptions to the timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

Here, Appellant's judgment of sentence became final on January 12, 2007, the date by which he could have filed a timely petition to the Pennsylvania Supreme Court. Appellant did not file the Petition until March 25, 2016, eight years after the jurisdictional time limit. Therefore, Appellant's petition is untimely on its face.

Appellant claims that the Petition falls within the third exception under 42 Pa.C.S. § 9545(b)(1)(iii), in that his conviction violated a new constitutional right that should be applied retroactively. Appellant's Brief at 2. This exception requires a petitioner to prove two elements. First, the new constitutional right asserted must be "recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania" after the time provided in the PCRA. 42 Pa.C.S. § 9545(b)(1)(iii). Second, the right must have "been held by that court to apply retroactively." **Id.**

Appellant asserts that a new constitutional right was recognized by the United States Supreme Court in **Alleyne** and that it must be applied retroactively to his case, pursuant to **Montgomery**. Appellant's Brief at 2. **Montgomery** was decided on January 25, 2016, and Appellant filed the Petition on March 25, 2016. Thus, Appellant's Petition invoking this exception was properly filed within sixty days of the **Montgomery** decision. Nonetheless, the PCRA court concluded that the mandatory minimum sentence "does not run afoul" of the rule created in **Alleyne** because the facts that increased the mandatory minimum sentence were submitted to

the jury and proven beyond a reasonable doubt; thus, it is not applicable to Appellant's case.  PCRA Court Opinion, 2/28/17, at 9.  The PCRA court further concluded Appellant's issue lacks merit because *Alleyne* is not be applied retroactively on state collateral review.  *Id.*  We agree.

In *Alleyne*, the United States Supreme Court held that any fact that increases a mandatory minimum criminal penalty must be proven beyond a reasonable doubt as an element of the offense, and it must be submitted to the jury.  *Alleyne*, 133 S.Ct. at 2155; *see, e.g.*, *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015) (affirming the unconstitutionality of 18 Pa.C.S. § 6317, which imposes mandatory minimum sentencing for controlled substance crimes occurring near a school zone, as determined by *Alleyne*).[5]  In the case before us, the mandatory minimum sentence is not in violation of the holding in *Alleyne*.  All facts required to prove a first-degree murder conviction and its corresponding mandatory minimum sentence of life imprisonment were presented to the jury.  As the PCRA court explained, the jury heard the evidence and determined that the prosecution satisfied the necessary elements for first-degree murder beyond a reasonable doubt.  PCRA Court Opinion, 2/28/17, at 9.

_____

[5] The *Alleyne* ruling was an extension of the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held that a jury must find any fact that imposes a penalty beyond the mandatory maximum.

Moreover, even if *Alleyne* was applicable, Appellant's issue would lack merit because our Supreme Court has explicitly held that *Alleyne* is not to be given retroactive effect on collateral review. *Commonwealth v. Washington*, 142 A.3d 810, 819–820 (Pa. 2016). *Montgomery* does not negate *Washington*. *Montgomery's* holding that *Miller v. Alabama*, 132 S.Ct. 2455 (2012), *i.e.*, that mandatory life sentences without parole for juvenile offenders are unconstitutional, is to be applied retroactively to cases on collateral review is limited to juvenile offenders. *Montgomery*, 136 S.Ct. at 724. Appellant was not a minor at the time of the crime.[6]

In conclusion, Appellant's PCRA petition is untimely, and the third exception asserted by Appellant does not apply. Thus, the PCRA court properly dismissed the Petition and denied relief based on its lack of jurisdiction. *See Commonwealth v. Fairiror*, 809 A.2d 396, 398 (Pa. Super. 2002) (holding that PCRA court lacks jurisdiction to hear untimely petition). Likewise, we lack the authority to address the merits of any

_____

[6] Appellant additionally relies on *Welch v. United States*, 136 S.Ct. 1257 (2016), wherein the United States Supreme Court announced that its holding in *Johnson v. United States*, 135 S.Ct. 1221 (2016), is retroactive on collateral review. In *Johnson*, the Court held that imposing an increased sentence under the Armed Career Criminal Act ("the Act") violated due process principles because the definition of prior "violent felony" in the residual clause of the Act was unconstitutionally vague. *Johnson*, 135 S.Ct. at 2557. Appellant's reliance on *Welch* is also misplaced. The *Welch* Court did not assess the retroactively of *Alleyne*, and Appellant's claim does not involve an increased sentence under the Act. As such, *Welch* does not trigger the third timeliness exception pursuant to 42 Pa.C.S. § 9545(b)(1)(iii).

substantive claims raised in the Petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007) ("[J]urisdictional time limits go to a court's right or competency to adjudicate a controversy.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017