J-S68038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MILLER | |
| Appellant | No. 3563 EDA 2014 |

Appeal from the PCRA Order November 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1010301-1997

BEFORE:  BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:  **FILED December 18, 2015**

Appellant, John Miller, appeals from the November 13, 2014 order dismissing, as untimely, his fourth petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The PCRA court set forth the facts and procedural history of this case as follows.

> On October 8, 1996, the decedent Anthony Mullen ("Mullen") was shot and killed in a parking lot adjacent to 30th Street Station [in Philadelphia].  The police recovered a 9 mm cartridge casing next to Mullen's body, as well as three .25-caliber cartridge casings on the opposite side of Mullen's automobile.  Furthermore, the police recovered a .25-caliber firearm underneath Mullen's body, with one round jammed in the chamber and four rounds in the magazine.  No other firearm was recovered from the scene.

On February 27, 1997, the police arrested David Williams ([David]) for robbery. On February 28, 1997, [David] was interviewed by Detective Michael Sharkey ("Sharkey"). During the interview, [David], a neighbor and lifelong acquaintance of [Appellant], told Sharkey that [Appellant] was responsible for Mullen's murder. On March 4, 1997, [David] was interviewed by Detective Jeffrey Piree ("Piree") of the Homicide Unit. During the interview, [David] stated that [Appellant] confessed to him that he killed Mullen during a robbery attempt. [David] further stated that [Appellant] told him he had obtained the murder weapon from a neighbor, Michael Arnold ("Arnold") and then threw the gun away after the murder. [David] stated that he then confirmed this information with Arnold and Arnold told him that [Appellant] confessed to him as well.

On June 23, 1997, Detective Richard Bova ("Bova") interviewed Arnold. During the interview, Arnold confirmed that [Appellant] had taken a gun from him in August 1996. Arnold stated that he retrieved the gun from his home after a fight erupted on the street outside[.] Arnold further stated that he then discarded the gun when the police arrived on the scene, and he saw [Appellant] pick the gun up. Arnold stated that the gun was either a silver automatic .380-caliber pistol or a 9 mm pistol. Arnold further stated that he spoke with [Appellant] on October 8, 1996, and [Appellant] confirmed at that time that he still possessed the gun.

On June 25, 1997, [Appellant] was arrested and charged with murder, robbery and related offenses. On October 30, 1997, during a preliminary hearing, [David] recanted the statement he had given to police. [David] claimed that, while the statement accurately reflected what he told the police, he had lied to the police because he and [Appellant] were not getting along at the time. From September 24, 1998 to September 29, 1998, a jury trial was held before the Honorable Judge John Poserina. At trial, [David] again recanted the statement he had given to police. [David] testified

that he did not give any information to the police and they had fabricated his statement. During their testimony, Sharkey and Piree refuted [David's] recantation. Furthermore, Arnold testified that [Appellant] had taken his gun, but stated that the gun did not work and he was unaware of its caliber. On September 29, 1998, the jury found [Appellant] guilty of second-degree murder, robbery and possession of an instrument of crime (PIC). On December 15, 1998, [Appellant] was sentenced to life imprisonment on the murder charge.

[Appellant] appealed the judgment of sentence to the Superior Court, which affirmed the sentence on December 15, 2000. [**Commonwealth v. Miller**, 769 A.2d 1207 (Pa. Super. 2000) (unpublished memorandum).] [Appellant] did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. On May 15, 2001, [Appellant] filed his first PCRA petition, alleging after-discovered evidence on the basis of statements by Clinton Bailey ("Bailey") and Terry Scruggs ("Scruggs") which implicated [David] in Mullen's murder. On August 5, 2002 and August 8, 2002, the PCRA court held an evidentiary hearing and received testimony from Bailey and Scruggs. On October 29, 2002, the PCRA court dismissed [Appellant's] petition after concluding that the testimony of Bailey and Scruggs was unbelievable.

On November 26, 2002, [Appellant] filed a Notice of Appeal to the Superior Court. On January 8, 2003, [Appellant] filed a Concise Statement of Errors pursuant to Pa.R.A.P. 1925(b) and attached to it a copy of a letter from [David] to [Appellant's] mother. In the letter, [David] claimed that he killed Mullen and falsely implicated [Appellant]. On April 16, 2003, [Appellant] filed an Application for Remand with the Superior Court for an evidentiary hearing regarding the letter. On May 21, 2003, the Superior Court granted [Appellant's] request for an evidentiary hearing, which was held on July 30, 2003. [David] testified at the hearing that he shot and killed Mullen in self-defense. [David] further

- 3 -

testified that he had known Mullen for several months prior to the murder, and had shot him while he was trying to recover money that he had loaned to Mullen a few days prior to the shooting. [David] also testified that the police had accurately recorded what he told them in his statement, but that he had lied to them. However, [David] testified incorrectly that Mullen was a short white male who was wearing a green jacket on the night of the shooting, and incorrectly identified the location of the shooting as occurring inside the parking garage adjacent to the station. In reality, Mullen was a tall, heavy-set, African-American male who was wearing a red jacket on the night of the shooting, and the shooting occurred near Mullen's van in an open air parking lot farther away from the station. At the conclusion of the hearing, the PCRA court stated that it believed [David] was lying under oath. The PCRA court then referred the case back to [the] Superior Court. On that same day, [David] was arrested for perjury based on the testimony he gave at the hearing. On February 26, 2004, [David] pled guilty to perjury and was sentenced to 1 to 3 years['] incarceration plus 4 years['] probation. On October 22, 2004, the Superior Court affirmed the PCRA court's dismissal of [Appellant's] petition. [**Commonwealth v. Miller**, 864 A.2d 581 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1198 (Pa. 2005).] On April 26, 2005, the Supreme Court of Pennsylvania denied [Appellant's] Petition for Allowance of Appeal. [**Id.**]

On October 6, 2005, [Appellant] filed a petition for *habeas corpus* in the United States District Court for the Eastern District of Pennsylvania. On January 30, 2007, the Honorable Judge Bruce Kauffman dismissed [Appellant's] petition without a hearing and ruled that no Certificate of Appealability should issue. On February 20, 2007, [Appellant] filed a Notice of Appeal and Application for Certificate of Appealability to the United States Court of Appeals for the Third Circuit. On July 27, 2007, the Honorable Judge Morton Greenberg denied [Appellant's] request for a Certificate of Appealability. On October 23, 2007, [Appellant] filed

- 4 -

a Petition for a Writ of Certiorari to the United States Supreme Court, which denied [Appellant's] petition on February 19, 2008. [*Miller v. Beard*, 552 U.S. 1205 (2008).]

On October 23, 2007, [Appellant] filed his second petition for relief pursuant to the PCRA. [Appellant] submitted with his petition an affidavit from fellow inmate Andre Monroe, who claimed to have witnessed [David] shoot and kill Mullen. On October 17, 2008, the PCRA court dismissed [Appellant's] petition without a hearing as untimely. [Appellant did not file a notice of appeal to the Superior Court.]

On April 19, 2011, [Appellant] filed a third petition for relief pursuant to the PCRA. [Appellant] attached to his petition another letter from [David] to his mother, in which [David] again declared that he killed Mullen and claimed that he incorrectly identified Mullen as a white male due to panic while on the witness stand. On June 6, 2011, [Appellant] amended his petition to include an affidavit from Arnold, in which Arnold recanted his pretrial statement to police and his testimony at trial. On July 18, 2011, the PCRA court sent [Appellant] a [Pennsylvania Rule of Criminal Procedure] 907 notice, indicating that his petition would be dismissed as untimely. On August 4, 2011, [Appellant] filed a response to the [Rule] 907 notice.

On August 5, 2011, new counsel entered an appearance on behalf of [Appellant]. On November 3, 2011, defense counsel filed an amended petition, alleging after-discovered evidence and governmental interference as exceptions to the time-bar. Defense counsel attached to the amended petition a statement from Mark Manigault ("Manigault"). In the statement, Manigault claimed that he shared a cell with [David] in February 1997 and [David] told him that he was going to pin a murder that he committed on someone else in order to get out of jail. Manigault further claimed that he was interviewed by police about Mullen's murder, but told the police that

he knew nothing. Defense counsel argued that the police failed to disclose this alleged evidence to [Appellant] prior to trial and that it would have changed the outcome of [Appellant's] trial. On November 18, 2011, the PCRA court dismissed [Appellant's] petition as untimely. On November 28, 2011, defense counsel filed a motion for reconsideration. On December 13, 2011, the PCRA court denied [Appellant's] motion. On December 15, 2011, [Appellant] filed a Notice of Appeal to the Superior Court. On February 13, 2012, [Appellant] filed a second petition for *habeas corpus* in federal court. [That petition remains pending in the United States District Court for the Eastern District of Pennsylvania.] On March 9, 2012, [Appellant] filed an Application for Remand with the Superior Court for an evidentiary hearing regarding evidence which is now the subject of his current PCRA petition. On March 28, 2012, the Superior Court denied [Appellant's] Application for Remand. On July 24, 2012, the Superior Court affirmed the denial of [Appellant's] PCRA petition. [**Commonwealth v. Miller**, 55 A.3d 145 (Pa. Super. 2012) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.]

On September 20, 2012, [Appellant] filed a fourth petition for relief pursuant to the PCRA, invoking the after-discovered evidence and governmental interference exceptions to the time-bar. In the instant petition, [Appellant] alleges that, on the same day [David] gave his statement to the police implicating [Appellant] in Mullen's murder, [David] also gave a statement to the police which implicated Jack Williams ("Jack") in an unrelated murder. [Appellant] claims that [David] fabricated this statement to the police as well, and later told Jack that he purposefully included false information in the statement. [Appellant] further claims that [David] fabricated the statement against [Appellant] as well as the statement against Jack in order to receive leniency on his own pending charges. Jack was subsequently found guilty of first-degree murder

- 6 -

at trial. Four witnesses testified for the Commonwealth at Jack's trial, although [David] was not called to testify. [Appellant] alleges that he first learned about this other statement [David] gave during a phone call between defense counsel and [David] on April 27, 2012. [Appellant] argues that the Commonwealth failed to disclose to the defense that [David] had given an allegedly false statement to the police concerning a separate homicide on the same day that he gave his statement to police implicating [Appellant] in Mullen's murder. [Appellant] further argues that, had the jury known about this second statement, the outcome at trial would have been different. Furthermore, [Appellant] claims that Arnold again recanted the statement he gave to police and the testimony he gave at trial.

On September 4, 2013, the Commonwealth filed a motion to dismiss [Appellant's] PCRA petition. On October 11, 2013, [Appellant] filed a response to the Commonwealth's motion to dismiss. On October 17, 2014, [the PCRA court] sent [Appellant] a notice pursuant to Rule 907, indicating that his petition would be dismissed because the issues raised in the petition were without merit. [Appellant] did not file a response to the [Rule] 907 notice. On November 13, 2014, after independent review of [Appellant's] *pro se* petition, defense counsel's amended petition, the Commonwealth's motion to dismiss, and [Appellant's] response to the Commonwealth's motion to dismiss, [the PCRA court] dismissed the petition based upon a lack of merit. On November 21, 2014, [Appellant], through counsel, filed a Notice of Appeal to the Superior Court.[1]

PCRA Court Opinion, 1/30/15, at 1-7 (footnote omitted).

_____

[1] The PCRA court did not direct Appellant to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement of matters complained of on appeal. The PCRA court authored a Rule 1925(a) opinion on January 30, 2015.

On appeal, Appellant presents the four following issues for our review, which we have reordered for purposes of our discussion.

> 1. Whether the PCRA court erred in dismissing Mr. Miller's PCRA [p]etition as untimely.
>
> [2]. Whether the PCRA court erred in finding that [Appellant's] claim that governmental interference in the form of failure to disclose the existence of exculpatory evidence was not a denial of due process under the Pennsylvania Constitution and the United States Constitution as construed by the United States Supreme Court in **Brady v. Maryland**, 373 U.S. 83 (1963) and **Commonwealth v. Watkins**, 108 A.3d 692 (Pa. 2014).
>
> [3]. Whether the PCRA court erred in failing to hold an evidentiary hearing to allow [Appellant] to demonstrate the court's jurisdiction and to establish his claim.
>
> 4. Whether the PCRA court erred in denying [Appellant's] freestanding claim of actual innocence pursuant to the Pennsylvania and United States Constitutions.

Appellant's Brief at 4.

We begin by noting our well-settled standard of review. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). "It is well-settled

- 8 -

that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." ***Commonwealth v. Robinson***, 82 A.3d 998, 1013 (Pa. 2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted).

As Appellant's first and second issues on appeal both raise exceptions to the PCRA time-bar, we address them together. Therein, Appellant contends that the PCRA court erred in dismissing his petition as untimely. The timeliness of Appellant's PCRA petition implicates the jurisdiction of this Court and the PCRA court. ***Commonwealth v. Davis***, 86 A.3d 883, 887 (Pa. Super. 2014) (citation omitted). Pennsylvania law is clear that when "a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition." ***Commonwealth v. Seskey***, 86 A.3d 237, 241 (Pa. Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 103 (Pa. 2014). The "period for filing a PCRA petition is not subject to the doctrine of equitable tolling; instead, the time for filing a PCRA petition can be extended only if the PCRA permits it to be extended[.]" ***Commonwealth v. Ali***, 86 A.3d 173, 177 (Pa. 2014) (internal quotation marks and citation omitted), *cert. denied*, ***Ali v. Pennsylvania***, 135 S. Ct. 707 (2014). This is to "accord finality to the collateral review process." ***Commonwealth v. Watts***, 23 A.3d 980, 983 (Pa. 2011) (citation omitted). "However, an untimely petition may be received when the petition alleges, and the petitioner proves, that

any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), are met." ***Commonwealth v. Lawson***, 90 A.3d 1, 5 (Pa. Super. 2014) (citation omitted). Section 9545 sets forth the three exceptions to the PCRA time-bar as follows.

### § 9545. Jurisdiction and proceedings

…

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

…

42 Pa.C.S.A. § 9545(b)(1). A PCRA petition invoking one of these time-bar exceptions must "be filed within 60 days of the date the claim could have been presented." *Id.* § 9545(b)(2). "A petitioner fails to satisfy the 60-day requirement of Section 9545(b) if he or she fails to explain why, with the exercise of due diligence, the claim could not have been filed earlier." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008).

Herein, Appellant was sentenced on December 15, 1998. This Court affirmed his judgment of sentence on December 29, 2000, and Appellant did not file a petition for *allocator* with our Supreme Court. As a result, Appellant's judgment of sentence became final on January 29, 2001, when the time for Appellant to file such a petition expired.[2] ***See id.*** § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[]"); Pa.R.A.P. 1113 (declaring an appeal to our Supreme Court must be filed within 30 days of an order of this Court). Accordingly, Appellant had until January 29, 2002 to file a timely PCRA petition. ***See*** 42

---

[2] We note that the 30th day following this Court's decision fell on Sunday, January 28, 2001. As such, the last day Appellant could have filed a petition for *allocator* was Monday, January 29, 2001. ***See*** 1 Pa.C.S.A. § 1908 (providing that when the last day of a calculated period of time falls on a Saturday or Sunday, such days shall be omitted from the computation).

Pa.C.S.A. § 9545(b)(1) (providing that a PCRA petition must be filed within one year of the judgment of sentence becoming final to be considered timely). Therefore, Appellant's current petition, his fourth, filed on September 20, 2012, was facially untimely. *See id.*

Appellant argues, however, that the PCRA court erred in dismissing his petition because the "newly discovered fact" and the "governmental interference" exceptions to the time-bar enumerated in Section 9545 apply in this case. Appellant's Brief at 22. We will discuss each exception in turn.

Appellant's PCRA petition raised two facts that he claimed were newly discovered. *Id.* at 23. First, like his prior PCRA petition, Appellant again presented his overarching claim that David's initial statement to police implicating Appellant was false. The "newly discovered fact" Appellant relied on in his latest PCRA petition to discredit David was that David gave a separate statement to police, implicating Jack in an unrelated homicide case, hours before David provided the statement accusing Appellant of Mullen's homicide. *Id.* at 23-24. According to Appellant, David later told Jack that he had made a false statement inculpating Jack in exchange for leniency in his robbery case. *Id.* at 24. Appellant argues that this constituted a newly discovered fact that he could not have previously discovered through due diligence, which meets the exception to the time-bar in Section 9545(b)(1)(ii). Moreover, Appellant's PCRA petition pled a second allegedly newly discovered fact, which was that Arnold supplied a supplemental

recantation in greater detail than the repudiation that was one of the grounds for Appellant's prior PCRA petition. *Id.* at 29-31. For the following reasons, we conclude that neither of the ultimate facts that Appellant asserted meets the time-bar exception because they were not newly discovered.

Our Supreme Court has explained that the newly discovered fact exception in Section 9545(b)(1)(ii) "requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him" and that he could not have ascertained those facts by the exercise of "due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1270-1272 (Pa. 2007). A PCRA petitioner cannot meet this exception by introducing a new source of a previously known fact. *Marshall*, *supra*.

Herein, Appellant's PCRA petition pled new sources of two previously known facts.[3] First, Appellant attempted to show, yet again, that David falsely accused him of Mullen's murder. He sought to do so in this PCRA

_____

[3] Appellant claimed he discovered both sources while the appeal of his third PCRA petition was pending with this Court. Specifically, on March 18, 2012, Arnold signed a written certification admitting that he falsely accused Appellant of taking Arnold's discarded handgun. Appellant's Brief at 29. Moreover, on April 27, 2012, David disclosed to Appellant's counsel that he made the false statement implicating Jack. *Id.* at 28. Then, on June 1, 2012, Appellant's counsel obtained Jack's discovery packet. *Id.* Thereafter, on July 27, 2012, this Court decided Appellant's appeal of his third PCRA petition, affirming the PCRA court's dismissal of the petition. On September 20, 2012, Appellant filed the instant PCRA petition, his fourth, which was within 60 days of this Court's decision. Appellant claims this satisfies the 60-day requirement of Section 9545(b)(2). *Id.* at 29.

petition by introducing a new source in the form of David's allegedly false statement to police accusing Jack of a separate homicide while David was in custody on robbery charges. David's statement accusing Jack, however, is simply Appellant's latest means to discredit David's statement implicating him in Mullen's murder. Appellant has known the ultimate fact that David falsely accused Appellant of Mullen's homicide since his preliminary hearing in October 1997. A prior panel of this Court, in affirming the dismissal of Appellant's third PCRA petition, detailed David's various recantations of his statement as follows.

> On March 4, 1997, [David] signed a statement that [Appellant] had confessed to him that he murdered Mullen in a botched robbery attempt. Thereafter, at [Appellant's] October 30, 1997 preliminary hearing, [David] testified that his signed statement had accurately reflected what he had told police, but not what actually happened. Subsequently, at trial, [David] testified that the detectives had actually made up "ninety percent" of his statement themselves. Then, in an undated letter written to [Appellant's] mother sometime in the fall of 2002 and submitted to the PCRA court on January 3, 2003, [David] confessed to having killed Mullen *himself* and stated that [Appellant] had no knowledge of the crime. [David] stated that the shooting occurred when he went to the parking lot to collect drug money owed to him by Mullen. At a subsequent PCRA hearing in July 2003, [David] again confessed to Mullen's murder and testified, under oath, that Mullen was a white male wearing a green jacket. In fact, Mullen was a black male wearing a red jacket. Finally, on March 19, 2011, [David] sent another letter to [Appellant's] mother in which he again confessed to murdering Mullen and also: (1) admitted to having lied in court at [Appellant's] July 2003 PCRA hearing and (2) stated that the shooting

> occurred when he attempted to rob Mullen, not when he was collecting a drug debt as he had previously stated.

*Commonwealth v. Miller*, 55 A.3d 145 (Pa. Super. 2012) (unpublished memorandum at 19 n.9) (citation omitted; emphasis in original).

Based on the foregoing, we conclude Appellant previously knew the "fact" that David falsely accused Appellant of Mullen's murder and David's statement implicating Jack is merely a new source of that previously known fact, which does not satisfy the time-bar. *See Marshall*, *supra*. Accordingly, the PCRA court did not abuse its discretion or err as a matter of law in dismissing Appellant's petition as untimely. *See Fears*, *supra*.

Similarly, Appellant asserts that Arnold's latest, most detailed recantation is a newly discovered fact capable of overcoming the time-bar. Appellant's Brief at 29 (stating Arnold's latest recantation "describes Arnold's motivations to provide false information against [Appellant]"). Arnold, however, recanted his initial statement to police both at Appellant's trial and in a 2011 statement. In the 2011 statement to Appellant's counsel, Arnold claimed that he fabricated his original statement to police to eliminate Appellant as his competitor in the local drug trafficking market. The 2011 statement was one of the grounds that Appellant cited in his third PCRA petition. Here, because Arnold's third and most recent recantation is merely a more detailed version of a fact previously known to Appellant, and litigated in Appellant's third PCRA, it cannot overcome the time-bar. *See Marshall*,

***supra***. Accordingly, the PCRA court did not abuse its discretion or commit an error of law by concluding Appellant did not plead or prove the newly discovered fact exception to the PCRA time-bar. ***See Fears***, ***supra***.

Alternatively, in an attempt to invoke the governmental interference exception to the time-bar at Section 9545(b)(1)(i), Appellant contends that the Commonwealth was aware of David's false statement implicating Jack, but did not disclose it to him in discovery in violation of its obligations under ***Brady v. Maryland***, 373 U.S. 83 (1963). Appellant's Brief at 35.

Our Supreme Court has explained the interaction between ***Brady*** and the governmental interference exception to the PCRA time-bar as follows.

> Although a ***Brady*** violation might fall within the "governmental interference" exception, § 9545(b)(1)(i) nonetheless requires a petitioner to plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence. The merits of a ***Brady*** claim need not be addressed until it is established that the instant petition was timely filed.

***Commonwealth v. Williams***, 105 A.3d 1234, 1240 (Pa. 2014) (citations omitted), *cert. granted*, ***Williams v. Pennsylvania***, 136 S. Ct. 28 (2015). Accordingly, we must determine whether the Commonwealth interfered with Appellant's ability to raise the claim that David's statement was false and whether Appellant could have uncovered David's statement about Jack through due diligence. ***Id.***

In concluding Appellant did not exercise due diligence, the PCRA court reasoned as follows.

> [A]s the Superior Court noted in its prior dismissal of [Appellant's] third PCRA petition, [Appellant] had known [David] since childhood and [David] had been actively cooperating with [Appellant's] efforts to exonerate himself since at least 2003. In holding that [Appellant] had not exercised due diligence in obtaining Manigault's statement, the Superior Court stated that [Appellant] could have simply asked [David] if he confessed to anyone else about shooting Mullen. Likewise, here, [Appellant] or [] counsel earlier could have obtained information about the other statement [David] gave by asking [David] an equally simple question as to what occurred while he was in police custody on the day he gave the statement. Certainly, the circumstances under which a witness gives a statement while in police custody are commonly inquired into by defense counsel in order to determine a possible basis to impeach that statement. Thus, [Appellant] has failed to demonstrate that he exercised due diligence in obtaining the evidence of [David's] other statement upon which this fourth PCRA petition is based.

PCRA Court Opinion, 1/30/15, at 11. We discern no abuse of discretion or error of law in the PCRA court's finding that Appellant did not exhibit due diligence in obtaining David's statement about Jack. **See Williams**, **supra**. We emphasize that David had recanted his statement since Appellant's preliminary hearing and had been actively assisting Appellant in his post-conviction proceedings since at least 2003. Because of David's cooperation, we conclude that Appellant could have ascertained David's statement about Jack through the exercise of due diligence. Accordingly, Appellant cannot

meet the governmental interference exception to the PCRA time-bar. ***See id.*** Moreover, because Appellant's petition is untimely, we need not address the merits of the alleged ***Brady*** violation. ***See id.*** Therefore, we conclude Appellant's first two issues on appeal are meritless because his untimely PCRA petition failed to meet either the newly discovered fact or the governmental interference exception to the time-bar, and the PCRA court did not abuse its discretion or err as a matter of law in dismissing the petition as untimely. ***See Fears***, ***supra***.

In his third issue on appeal, Appellant argues that the PCRA court erred by denying him a hearing on his petition before dismissing it as untimely. Appellant's Brief at 32. We note that there is no absolute right to an evidentiary hearing in a post-conviction proceeding; instead, the trial court may forego a hearing when confronted with a frivolous claim. ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012). We review a PCRA court's decision to dismiss without a hearing for an abuse of discretion. ***Id.*** Herein, the PCRA court explained that it dismissed Appellant's PCRA petition without a hearing because it found that Appellant's claims were without merit. PCRA Court Opinion, 1/30/15, at 13. We conclude the PCRA court's dismissal without a hearing was not an abuse of its discretion because Appellant's attempts to satisfy the time-bar exceptions were frivolous. ***See Wah***, ***supra***. Therefore, Appellant's third issue on appeal is meritless.

In his fourth issue, Appellant contends the PCRA court erred in rejecting his "independent claim of actual innocence." Appellant's Brief at 39. Appellant asserts that the PCRA court erred because his actual innocence claim is a freestanding claim, citing federal *habeas corpus* precedent. **Id.** at 39-40. Our Supreme Court, however, has specifically rejected this argument. **See Commonwealth v. Abu-Jamal**, 833 A.2d 719, 738 (Pa. 2003) (explaining that a claim of actual innocence is cognizable under the PCRA and subject to the time-bar), *cert. denied*, **Abu-Jamal v. Pennsylvania**, 541 U.S. 1048 (2004). As Appellant's claim is cognizable under the PCRA, and we have concluded Appellant's petition is untimely, we are without jurisdiction to reach the merits of his actual innocence claim. **See id.** Accordingly, Appellant's fourth issue on appeal does not warrant relief.

Based on the foregoing, we conclude that the PCRA court did not abuse its discretion or commit an error of law in finding Appellant's serial PCRA petition untimely and dismissing it without a hearing.[4] **See Fears**, **supra**. Accordingly, we affirm the PCRA court's November 13, 2014 order.

_____

[4] While the Commonwealth's brief addresses the timeliness issue, we do not consider the brief. After we granted two extensions to the Commonwealth, its brief was due on or before August 26, 2015, with no further extensions granted. The Commonwealth, however, did not file its brief until September 29, 2015; thus, it was not timely filed. On October 16, 2015, Appellant objected to the untimeliness of the brief. Accordingly, we grant Appellant's motion to strike and disregard the Commonwealth's brief.

Order affirmed.

Judge Donohue joins the memorandum.

President Judge Emeritus Bender files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/18/2015</u>